**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ROBERT L. BELL, JR. ) | CASE NO.  4:08-CV-2014 |
|     Plaintiff, ) | |
| ) | |
|     v  ) | JUDGE GWIN |
| ) | |
| MICHAEL J. ASTRUE, ) | MAGISTRATE JUDGE VECCHIARELLI |
| Commissioner of Social Security ) | |
| ) | |
|     Defendant. ) | **REPORT & RECOMMENDATION** |
| ) | |
| ) | |

Claimant, Robert L. Bell, Jr., challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Bell's application for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 416 (i) and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 423 and 42 U.S.C. § 381(a).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge for a report and recommendation pursuant to a referral under Local Rule 72.2(b).

## I. Procedural History

On February 24, 2005, Robert L. Bell, Jr. ("Bell") filed an application for DIB.  On March 11, 2005, Bell filed an application for SSI . Both applications allege disability beginning February 28, 2002.  The claims were denied initially and upon reconsideration. Plaintiff timely filed a request for a hearing.

Administrative Law Judge ("ALJ"), James L. Lawwill, held a hearing on January 3, 2008, at which Bell, represented by counsel, testified.  The ALJ issued an opinion on February 4, 2008 in which he determined that Bell was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.  Bell filed an appeal to this Court.

On appeal, Bell claims that the Commissioner's determination that Bell's gouty arthritis does not restrict him from work activity except on an occasional, brief basis is not supported by substantial evidence.  The Commissioner disputes this claim.

## II.  Evidence

### A.  Personal and Vocational Evidence

Bell was born June 22, 1952.  He was 55 years old at the time of the hearing.  Transcript ("Tr.")  322  He attended school through the eleventh grade and subsequently received his GED.  (Tr. 323) Bell's past work included janitorial work, such as stripping and buffing floors, which he performed from 1996 until 2002.   (Tr. 327)  He stopped working in 2002 due to back problems and gout.  (Tr. 326) In 2007,  Bell worked four hours a day at a truck-stop to maintain his public assistance eligibility.  (Tr. 324-325). He did general maintenance at the truck-stop, including washing down the showers and sweeping the floor, until he stopped working in November 2007.   (Tr. 324)

### B. Medical Evidence

On July 30, 2002, Bell presented to the emergency room for right wrist pain.  Dr. Yazan Jadaliah saw him.  (Tr. 168-169) Dr. Jadaliah observed that Bell's hand was tender, but not swollen; there was no evidence of dislocation, subluxation, or ligametous laxity.  Bell's wrist had full range of motion with pain; it was not tender or

-2-

swollen. Bell's elbow had full range of motion without tenderness or swelling. (Tr. 168) 168). X-rays were normal, showing no dislocation or acute fracture. (Tr. 168-169). Bell was diagnosed with right hand and wrist pain and discharged with instructions to follow up with his personal physician. (Tr. 169)

On August 8, 2002, Bell presented to St. Elizabeth Hospital out patient clinic for a follow-up examination. (Tr. 121) The treatment notes indicate that Bell's wrist was swollen, and his range of motions was limited by pain, possibly caused by gout, chronic strain, carpal tunnel syndrome, or tenosynovitis. (Tr. 121) Bell was prescribed steroids and told to continue using ibuprofen and heat for pain relief. (Tr. 121)

Bell failed to return for appointments on August 8, 2002, September 2, 2002, and October 21, 2002. He returned on December 13, 2002 for bilateral wrist pain and intermittent chest pain. (Tr. 123) Bell then failed to return for five appointments between December 17, 2002 and January 31, 2003. (Tr. 125)

On February 23, 2003, Bell presented to the emergency room with left ankle pain. (Tr. 161-163) His ankle was tender and swollen, and his range of motion was limited due to pain. An X-ray of his ankle revealed some soft tissue swelling but was otherwise normal. (Tr. 165)

On March 3, 2003, Bell presented to the St. Elizabeth Hospital out patient clinic complaining of right ankle pain for the past two weeks. (Tr. 125) His ankle was tender and swollen with decreased range of motion. He was diagnosed with gouty arthritis and prescribed steroids. He was told to return to the clinic after one to two weeks. (Tr. 126)

On March 11, 2003, Bell presented to the emergency room complaining of worsening ankle pain. (Tr. 159-160) He reported that he had obtained temporary relief

-3-

with steroids but was now out of the medication. An examination revealed tenderness and swelling of the ankle and limited range of motion due to pain. (Tr. 159) He was diagnosed with gout and given medication. (Tr. 160).

On July 16, 2003, Bell presented to the St. Elizabeth Hospital out patient clinic complaining of left wrist pain, which he had been experiencing for four days. He was diagnosed with acute gouty arthritis. (Tr. 128) Treatment notes dated July 23, 2003 indicate Bell reported some improvement in his wrist from steroids. (Tr. 130)

Bell failed to return for appointments five times between August 4, 2003 and January 12, 2004. (Tr. 132) On January 23, 2004, Bell presented to the St. Elizabeth Hospital out patient clinic complaining of gout pain in his knee and left shoulder pain. (Tr. 132) An examination revealed full range of motion in his knee, no edema, or erythema. He was diagnosed with gouty arthritis and prescribed steroids. The treatment notes indicate that Bell had not been compliant with his appointments, and he was counseled on the need to keep all appointments. (Tr. 132-133)

Bell failed to return for appointments on February 13, 2004, March 3, 2004, and August 4, 2004. (Tr. 133) On August 25, 2004, Bell presented to the emergency room for injuries to his right hand and wrist, which he sustained changing a tire. (Tr. 156) X-rays revealed an old fracture and mild degenerative changes but no acute fracture or dislocation. Bell was diagnosed with a right wrist strain and wrist pain. (Tr. 156-158)

On September 1, 2004, Bell presented to St. Elizabeth Hospital out patient clinic for follow up from his prior emergency room visit. An examination revealed slight edema and tenderness. He was unable to flex or extend his wrist. The examining physician noted his wrist pain was due to trauma, and his gout was stable. He was told

-4-

to obtain an MRI for follow-up. The treatment notes indicated that Bell had missed several prior appointments. (Tr. 133-134) A September 10, 2004 MRI revealed mild to moderate degenerative changes and mild inflammatory changes without distinct soft tissue injury. (Tr. 155)

Bell missed an appointment on October 4, 2004 but presented on November 1, 2004 complaining of continued right wrist pain. Bell reported that his gout was controlled with medication, but he had had a mild attack two weeks prior. (Tr. 136)

On November 4, 2004, Dr. Parduman Singh performed nerve conduction and electromyography testing on Bell. The test results were normal with the exception of borderline carpal tunnel syndrome bilaterally. Dr. Singh opined that Bell's wrist pain may be due to soft tissue process. (Tr. 153-154)

Bell missed scheduled appointments on December 6, 2004, January 10, 2005 and January 12, 2005. (Tr. 137)

On March 19, 2005, Bell presented to the emergency room complaining of intermittent chest pains and left sided body swelling, particularly in his thigh and knee. He presented for a follow up appointment on March 21, 2005 and reported less knee pain and swelling. Bell was assessed with left knee pain, possibly due to gout. (Tr. 138) On March 29, 2005, Bell missed a scheduled medical appointment. (Tr. 139)

On April 6, 2005, Bell presented to the emergency room complaining of left leg pain. The examining physician noted Bell's left knee was tender and swollen with limited range of motion due to pain. He diagnosed Bell with gout. (Tr. 296-297)

On June 6, 2005, Dr. Prabhudas Lakhani performed a consultive examination . Dr. Lakhani noted that Bell's right knee was swollen and warm with moderately severe

-5-

tenderness. His right knee movement was limited due to pain and swelling. X-rays of Bell's left knee showed mild to moderate narrowing of the medial compartment of the joint space. X-rays of Bell's lumbar spine were essentially unremarkable. Dr. Lakhani opined that Bell has multiple joint pain and lumbar pain that comes on and off suddenly. He opined that a definite diagnosis needs to be established. Dr. Lakhani further opined that Bell could possibly sit normally, could walk one half to one block, and could carry 30 pounds for short distances. (Tr. 116-117)

On June 10, 2005, Dr. Cindi Hill completed a physical residual functional capacity ("RFC") assessment of Bell. Dr Hill opined that Bell could lift 50 pounds occasionally, 25 pounds frequently, could stand and/or walk for about six hours out of an eight hour workday, could sit for about six hours of an eight hour workday, and had no push/pull limitations. Bell could climb ramps and stairs frequently; ladders, ropes, and scaffolds occasionally; could stoop and crouch frequently; and could kneel and crawl occasionally. No other limitations were noted. (Tr. 102-109)

On September 19, 2005, Bell presented to Humility of Mary Health Partners complaining of numbness in his right thigh. The examining physician noted Bell's history of knee, ankle, and wrist swelling and diagnosed Bell with inflammatory arthritis. (Tr. 291)

On April 10, 2006, Bell presented to his physician for a regular visit. Bell reported that he had been to the emergency room the day before for pain and swelling of his right wrist. He was given pain medication, which helped, but when he presented on April 10, 2006, he was still in pain. The doctor noted that Bell's right wrist was swollen, warm, and tender, with decreased range of motion. He had right shoulder pain with

minimal decrease in range of motion and no swelling.

On June 29, 2006, Bell presented to the emergency room complaining of gout in his knee. The examining physician noted that Bell's left knee was tender and mildly swollen. His range of motion was full, but painful. There was no evidence of dislocation, subluxation, or ligamentous laxity. Bell was diagnosed with knee pain, given medication, and counseled regarding the need for labs and further tests. (Tr. 236-237)

On July 18, 2006 Bell presented to Dr. Counto for knee pain. Dr. Counto noted that Bell's knee was tender and had decreased flexion due to pain; it was not swollen or red and had normal extension. X-rays showed soft tissue edema but were otherwise unremarkable. (Tr. 232) Dr. Counto prescribed medication to treat pain and to prevent gouty attacks. (Tr. 229)

On August 8, 2006, Bell presented to Dr. Counto for a follow up appointment. Bell reported that his knees hurt, but the pain is relieved by medication. Examination of Bell's knees revealed no effusion, erythema, edema, or deformities; normal range of motion and extension, but decreased flexion. (Tr. 227)

On September 20, 2006, Bell presented to the emergency room complaining of right foot pain. The examining physician noted that Bell's right first MTP joint and lateral midfoot were tender, swollen, and warm. The examining physician diagnosed gout. (Tr. 204-205)

On September 29, 2006, Bell presented to Dr. Counto for follow up. Dr. Counto noted that Bell's toe was swollen, red, and tender but had normal range of motion. Dr. Couto diagnosed acute gout and prescribed medication. (Tr. 202) Bell missed an

appointment on October 6, 2006 but returned for follow up on October 9. 2006. Bell reported that the medication helped somewhat. Upon examination, Dr. Counto noted the swelling of the right foot had improved, however Bell's left foot was swollen, red, and tender with difficult range of motion. Dr. Counto was unsure whether the problems with the left foot were due to gout or cellulitis. (Tr. 199)

Bell missed an appointment on October 20, 2006 but returned on October 31, 2006. (Tr. 199,194) Dr. Counto opined that Bell had acute gout, probably gouty arthritis of bilateral feet, but included a rule out diagnosis of rheumatoid arthritis. (Tr. 194)

Bell missed an appointment on November 8, 2006 but returned on November 13, 2006. (Tr. 194, 188) He reported that his pain had increased, and that he had gone to the emergency room the day before due to pain. He also reported that his gout recurs every two weeks. Examination of the left ankle revealed mild erythema and edema at the MP joint, mild tenderness and swelling of the mid foot, and decreased range of motion. Dr. Counto diagnosed recurrent gout. (Tr. 188) Bell did not return for his appointment with Dr. Counto on November 20, 2006. (Tr. 188)

On June 12, 2007, Bell presented to the emergency room for exacerbation of gout. Dr. Palmer, the emergency room physician, noted that Bell was well known to him from previous visits for gouty arthritis and also noted that Bell's examination was very consistent with gouty arthritis. Dr. Palmer treated Bell for pain and advised him to make certain dietary changes. (Tr. 193)

On August 9, 2007, Bell presented to Dr. Counto for follow up. Dr. Counto noted that Bell had not been taking his medications. Bell reported that he had run out of

-8-

medication, so Dr. Counto prescribed refills.  Dr. Counto also gave Bell a list of foods to avoid and counseled him regarding gout prevention.  (Tr. 180)

On August 27, 2007, Bell presented to Dr. Ahmed for lower back pain.  At that time, Bell reported that his gout symptoms had resolved.  Dr. Ahmed's examination of Bell's back revealed decreased range of motion with flexion and extension but normal range of motion with lateral rotation. Dr. Ahmed diagnosed low back strain/sprain and gouty arthritis of the right first MP joint, resolved.  Dr. Ahmed advised Bell that he could return to regular activity with no restrictions.  (Tr. 178)

On August 31, 2007 Bell returned to Dr. Ahmed complaining of lower back pain. Bell reported that he was unable to lift weight greater than 50 pounds, walk for more that one mile at a time, or stand for more than one hour at a time.  Bell asked for a work excuse setting forth these limitations.

Dr. Ahmed diagnosed lumbosacral strain/sprain injury and gave plaintiff a one month work excuse that included the requested limitations.  He referred Bell to physical therapy and prescribed Motrin.  He advised Bell to return in one month.  (Tr. 176)

On October 1, 2007, Bell presented to the emergency room for pain and swelling of his left knee and foot, which he attributed to a gout flare-up.  Examination revealed generalized edema, tenderness, and erythema of the knee, foot, and MTP joint.  The examining physician recommended blood work, x-rays and an ultrasound to rule out infection and confirm gout.  The doctor noted that Bell adamantly refused these tests. The doctor then gave Bell a steroid injection, and prescribed an oral steroid and Vicodin. (Tr. 175)

**C. Hearing Testimony**

Bell testified that he attended high school until the eleventh grade and later received his GED. (Tr. 323) He served in the army from 1972 until 1974. (Tr. 323) He was a cook in the army but since then has done janitorial work. (Tr. 324)

Bell testified that he was diagnosed with gout four to six years ago. (Tr. 331) He stated that he experiences periodic flare-ups of gout, and estimated that in the past couple of years he has experienced 20 episodes of gout. (Tr. 232) The flare-ups can last up to one and a half months, and the longest he has gone between episodes is two months. (Tr. 331-332)

Bell testified that the episodes are getting worse, and at times the pain is so intense he has requested that his limbs be cut off. (Tr. 332) When he experiences a flare-up, he cannot get around and requires help to care for his children. (Tr. 333) Bell stated that he watches his diet and takes medication, however he still experiences gout flare-ups. He further stated that he is unable to work due to his gouty arthritis. (Tr. 335)

### III. Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and

resource limitations. 20 C.F.R. § 416.1100 and 20 C.F.R. § 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. § 404.1520(d) and 20 C.F.R. § 416.920(d) (2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

In relevant part, the ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2007;

2. The claimant has not engaged in substantial gainful activity since February 28, 2002, the alleged onset date...;

3. The claimant has the following severe impairments: blurred vision with the need for proper refraction: chest pain atypical for angina; chronic low back pain; multiple joint pain including knees and wrists; gouty arthritis; hypertension; coronary artery disease...;

-11-

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...;

5. [T]he claimant has the residual functional capacity to perform the full range of medium work. Claimant has the ability to lift/carry fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk about six hours with breaks during an eight hour workday, and sit continuously with breaks every two hours for about six hours in a eight hour workday.

6. The claimant is unable to perform his past relevant work...;

7. The claimant was born on February 28, 2002 [sic] and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date;

8. The claimant has at least a high school education and is able to communicate in English;

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled" whether or not the claimant had transferrable job skills...;

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform...; and

11. The claimant has not been under a"disability as defined in the Social Security Act from February 28,2002 through the date of this decision....

(Tr. 16-17, 20-21)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. See *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v.*

*Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales,* 402 U.S. 389 (1971).

## VI. Analysis

Bell claims the ALJ erred in concluding that Bell's gout flare-ups do not restrict him from work activity except on an occasional, brief basis. Bell argues the record supports his allegation that he is unable to sustain work activity due to recurrent gout, and the ALJ's finding to the contrary is not supported by substantial evidence.

The ALJ found that Bell's gouty arthritis constitutes a severe impairment but concluded that it did not restrict Bell from engaging in work activity except on an occasional, brief basis. Accordingly, the ALJ did not include any limitations based on Bell's gout symptoms in his RFC finding. The ALJ's conclusion is based upon two findings. First, that Bell's testimony regarding the severity and functional consequences of his symptoms was not fully credible; and second, that the opinion evidence supports a finding that Bell is capable of performing medium work.[1]

---

[1]Medium work is defined as:
lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off an on, for a total of approximately 6 hours in an 8 hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers

When reviewing an ALJ's decision, the Court does not require a perfect opinion, but it does ask for a logically consistent opinion supported by citation to the record. Without this, the Court cannot meaningfully review the ALJ's opinion. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). In this case, the ALJ's opinion is, among other things, devoid of citation to the record, lacking in reasoned analysis, and factually incorrect. Therefore, the Court cannot meaningfully review the opinion.

### A. The ALJ's Credibility Finding

The ALJ gives several reasons for finding Bell's testimony less than fully credible; each of which is flawed. The ALJ concludes that Bell's pain is not as severe as he claims because his treating and examining physicians consistently characterize his impairments as minimal, mild, slight, normal, or unremarkable. (Tr. 18-19) The ALJ fails to identify the impairments to which he is referring and fails to include any citation to the record. Moreover he fails to explain how the physicians' characterizations of Bell's impairments undermine Bell's testimony regarding his gout pain. Therefore, the Court cannot determine whether the ALJ's conclusion is supported by the evidence.

The ALJ also found Bell's testimony incredible based upon statements that Bell purportedly made concerning his daily routine. Specifically, the ALJ stated that Bell

---

as well as use of the hands and arms.
Social Security Ruling 83-10, 1983 WL 31251, *see also* 20 C.F.R. § 404.1567(c).

acknowledged in his written statements and oral testimony that he is able to perform a number of daily activities that the ALJ found were consistent with a significant degree of overall functioning. (Tr. 19) Again, the ALJ fails to include any citation to the record. This lack of citation is particularly troubling given the nature of Bell's symptoms. Bell testified that his gouty arthritis is episodic. When he is not experiencing a flare-up, he is able to function; when he is experiencing symptoms he is unable to function and requires help to care for his children and to dress and bathe himself. (Tr. 80, 332-335) Accordingly, without knowing the specific statements to which the ALJ refers, and the context in which they were made, the Court cannot determine whether this evidence supports the ALJ's conclusion.

The ALJ further concludes that because there is no evidence that Bell experienced weight loss or muscle atrophy, his pain is not as severe as he claims. In support of this conclusion, the ALJ opines that two common side effects of chronic pervasive pain are weight loss and diffuse atrophy or muscle wasting. (Tr. 19) The ALJ is not a medical doctor and is not qualified to ascertain the medical side effects of pain generally, or as it relates to gouty arthritis. His decisions must be based on testimony and medical evidence in the record, and "[t]he ALJ cannot make his own independent medical determinations about the claimant." *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985), *citing Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982); *accord Tucker v. Sullivan*, 1992 U.S. Dist. LEXIS 11554 (D. Kan. 1992). In this case, the ALJ offers no medical evidence to support his opinion regarding the effects of chronic pain generally, or as it relates to Bell.

Finally, the ALJ concludes that Bell's testimony is incredible because Bell was

-15-

noncompliant with treatment, and his estimated gout flare-ups are not supported by the record. (Tr. 19) In support of this conclusion, the ALJ opines that the efficacy of treatment is only as good as the degree of compliance, but he fails to include any citation to support Bell's noncompliance or the effect thereof. While the Commissioner, in his brief, provides a detailed review of the medical evidence and why it supports the ALJ's findings, the ALJ did not do the same. Therefore, the Commissioner's recitation is purely conjecture upon the part of counsel and cannot serve as the basis for review of the ALJ's decision by a court. *See Watford v. Massanari*, No. 1:00 CV 00004, p. 13 (N.D. Ohio April 24, 2001); *see also National Labor Relations Board v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 715 n.1 (2001) (counsel's *post hoc* rationalizations are not substituted for the reasons supplied by the administration); *Securities and Exchange Comm'n v. Federal Water & Gas Corp.*, 332 U.S. 194, 196 (1947) ("a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); *Municipal Resale Serv. Customers v. Federal Energy Regulatory Comm'n*, 43 F.3d 1046, 1052 (6th Cir. 1995) (same); *Amoco Prod. Co. v. National Labor Relations Bd.*, 613 F.2d 107, 111 (5th Cir. 1980) (same and citing cases); *Sparks v. Bowen*, 807 F.2d 616, 617 (7th Cir. 1986) (in social security review, court must evaluate the reasons set forth by the ALJ); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

**B. Opinion Evidence**

The ALJ's analysis of the opinion evidence is also flawed. The ALJ states that he gave substantial weight to Dr. Ahmed's opinion as expressed in an August 31, 2007 work excuse. The ALJ erroneously states that the work excuse contains limitations based on Bell's gouty arthritis. (Tr. 19)  In fact, Bell did not request the work excuse due to gout, he requested it due to a back injury. Thus, the work excuse does not provide an opinion as to Bell's limitations when suffering from gout.  Rather, Bell's gout limitations are addressed in an August 17, 2007 notation that indicates Bell missed four days of work due to gout.  (Tr. 179)

Additionally, the ALJ's analysis of Dr. Ahmed's opinion is incorrect as a matter of law.  Opinions of treating physicians should be given greater weight than those of physicians hired by the Commissioner. *Lashley v. Secretary of Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983). Medical opinions are statements about the nature and severity of a patient's impairments, including symptoms, diagnosis, prognosis, what a patient can still do despite impairments, and a patient's physical or mental restrictions.  20 C.F.R. § 404.1527(a)(2).  This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record.  20 C.F.R. § 404.1527(d)(3) and 20 C.F.R. § 416.927(d)(3); *Jones v. Secretary of Health and Human Services,* 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 711-12 (6th Cir. 1988).  Where there is insufficient objective data supporting the treating physician's opinion and there is no explanation of a nexus between the conclusion of disability and physical findings, the fact finder may choose to disregard

the treating physician's opinion. *Landsaw v. Secretary of Health and Human Servs.,* 803 F.2d 211, 212 (6th Cir. 1986). The fact finder must, however, articulate a reason for not according the opinions of a treating physician controlling weight. *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987).

Even when a treating physician's opinion is found not to be entitled to controlling weight, it is still entitled to deference:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *4.

When the adjudicator determines that the treating source's opinion is not entitled to controlling weight, he is required to articulate good reasons for the weight given to the treating source's medical opinion. 20 C.F.R. § 404.1527(d) (2) and 20 C.F.R. § 416.927.

> [T]he ...decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *5.

Assuming *arguendo,* that the ALJ properly relied on the August 31, 2007 work excuse, he did not give it controlling weight and did not articulate his reasons for failing to do so. The August 31, 2007 work excuse contains a one hour limitation on weight

-18-

bearing that is not included in the RFC.  While the ALJ may reject this limitation, he is required to articulate his reasons for doing so.  Here, the ALJ failed to articulate any reason for rejecting the one hour limitation in favor of a six hour limitation on walking and standing.  The ALJ's failure to articulate his rationale is particularly disturbing given that Bell has a documented inflammatory disease that impacts his ability to walk and stand.  Additionally, the ALJ himself characterizes the weight accorded Dr. Ahmed's opinion as substantial and not controlling.

The ALJ also erred in his evaluation of the non-treating physicians' opinions.  Pursuant to 20 C.F.R. § 404.1527(d)(1), the Commission will generally give more weight to the opinion of an examining source than a non-examining source.  In this case, Bell was examined by Dr. Lakhani, a consulting physician, who opined that Bell should be able to lift 30 pounds, sit normally, and walk for one half to one block. The ALJ rejected this opinion, and instead credited the opinion of a state agency physician who reviewed the record and opined that Bell was able to perform medium work. The ALJ failed to articulate any reason for rejecting the opinion of the examining physician and for crediting the opinion of the state agency physician.

## VII. Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner should be remanded so the ALJ can provide a factually supported, reasoned opinion that complies with the regulations and allows for meaningful judicial review.

s/<i>Nancy A. Vecchiarelli</i><br>U.S. Magistrate Judge

Date: May 20, 2009

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** See U**nited States v. Walters, 638 F.2d 947 (6th Cir. 1981).** See also T**homas v. Arn, 474 U.S. 140 (1985), 1reh'g denied, 474 U.S. 1111 (1986).**